No. 405. ST. LOUIS UNION TRUST COMPANY v. TEXAS SOUTHERN RAILWAY COMPANY ET AL.

**Receivers—Certificates—Operating Expenses—Costs—Priority of Payment.**

A railway in the hands of a receiver, sold under foreclosure of a mortgage securing its bonds after having been operated by the receiver at a loss, failed to bring enough to pay claims for expenses of its operation, of various kinds, and the receiver's certificates issued under authority of the court for money borrowed to discharge liens of laborers and material men. Held:

(1) Various claims, such as for fuel, car rentals, rentals of terminal facilities, loss of cars and freight by fire, labor, rolling stock, traffic balances due other roads, injuries in person or property by the receivers' torts, etc., are

held properly adjudged by the court to be expenses of operation and given precedence in payment over the claims of the bondholders.

(2) The proceeds of special property of others sold by the receiver and of special funds deposited with him, such as by shippers for cotton concentration, converted by the receiver and used in the operation of the road, gave rise to claims for torts of the receiver similar to demands arising out of negligence in operation and were properly given precedence as operating expenses over the claims of bondholders.

(3) Claims of operating expenses have precedence of payment out of the net profits of operation; and if these are wanting or insufficient the court may give them precedence over bondholders as to payment out of the corpus of the property on sale; but this is not a right given by operation of law and is dependent on the order of the court fixing precedence.

(4) The priority of payment as between claims for operating expenses and those for receivers' certificates for money borrowed, is controlled and determined by the orders of the court classifying claims and ordering the issuance of the certificates.

(5) An order of foreclosure and sale of a railway in the hands of a receiver classified the claims as follows: A, operating expenses payable from the earnings, and these failing, payable first from the proceeds of sale of the property. Other claims were assigned to classes B., C., D., and E. and given priority of payment out of the proceeds of sale in that order. To class B. certain labor liens, and to class C. certain material men's liens, to class D. bonded indebtedness, and to class E. unsecured indebtedness, all arising prior to the receivership, were assigned by the same order, and jurisdiction was reserved to adjudicate other demands. Sale under the order was not made for some four years, the receiver continuing to operate the road. Meantime receiver's certificates to the amount of $150,000 were issued and sold under order of the court for money to pay claims originating before the receivership, allowed and assigned to classes B. and C. and the certificates given a first lien on the property with the same classification as the claims they were sold to pay. Such order gave priority of payment over the receiver's certificate to claims for operating expenses of the receiver, which were by the previous decree, which constituted the final judgment in the case, assigned to class A. The order authorizing the certificates recited a necessity for paying the claims before a sale of the road, contemplating its continued operation and the incurring of future operating expenses having precedence over the certificates, of which the purchasers were bound to take notice.

(6) An order to the receiver to make no more improvements and confine operating expenses to 80 percent of the gross earnings was a mere economic direction to the receiver not affecting the validity or classification of claims of persons thereafter furnishing supplies or labor to the receiver as fixed by a previous judgment of foreclosure and classification.

(7) Having fixed in its order of foreclosure, which was the final judgment and not set aside, the classification of existing claims and of those to arise from future operation, it was error for the court to refuse afterwards to direct their payment in accordance with such classification.

(8) An order classifying claims of certain interveners for debts of operation did not prejudice the rights of the holders of receiver's certificates which by the terms of the court's judgment had been postponed in their lien to operating expenses.

(9) An order fixing the salaries of the receiver and his attorney and the master in chancery may be modified by subsequent interlocutory orders allowing extra compensation, and persons whose claims were postponed to those of the cost of receivership have no ground of complaint because the salary first fixed was exceeded.

(10) The clerk of the court could be paid, as part of the costs of the receivership, for special services performed by him and not required by law as part of his official duties.

(11) Persons furnishing supplies for the operation of the road are not estopped from claiming precedence of payment over receiver's certificates by their knowledge of and failure to object to their issuance.

*M. B. Templeton,* for St. Louis Union Trust Co.—The orders di-

recting and authorizing the issuance of certificates declared and adjudicated that the same were and should be secured by first lien upon all the property of the said Texas Southern Railway Company, and said orders, judgments and decrees were final in their character and not appealed from, and hence were binding upon the court and all other parties. Kampmann v. Sullivan, 26 Texas Civ. App., 308; McIlhenny v. Binz, 80 Texas, 1; Sullivan v. Texas Briquette & Coal Co. (Sup. Ct.), 94 Texas, 541; Waters-Pierce Oil Co. v. U. S. & Mexican Trust Co., 44 Texas Civ. App., 397; Gregg v. Metropolitan, 197 U. S., 183; Mittenberger v. Logansport, 106 U. S., 286; Wallace v. Loomis, 97 U. S., 146; Union Trust Co. v. Midland R. R., 117 U. S., 436; Fosdick v. Scholl, 99 U. S., 251; Central Trust Co. v. Wabash R. R., 46 Am. & Eng. R. R. Cases, 301; Kneeland v. Luce, 141 U. S., 491; Fidelity Ins. Co. v. Shenandoah Valley R. R. Co., 38 Am. & Eng. R. R. Cases, 560; Giles v. Stanton, 86 Texas, 620; Trust Co. v. Grant Loc. Works, 135 U. S., 225.

The decree of the court directing the issuance of receiver's certificates, having been made with the knowledge, acquiescence and consent of all parties then interested in the subject matter, is conclusive and binding as to them, as well as parties whose debts accrued after said decrees. Kampmann v. Sullivan, 26 Texas Civ. App., 308; Humphreys v. Allen, 4 Am. & Eng. R. R. Cases, 1; Union Trust Co. v. Midland R. Co., 117 U. S., 434.

The court had a right to authorize (as he did) the payment of current claims, wages, labor, etc. Giles v. Stanton, 86 Texas, 620; Ellis v. Vernon Water Co., 86 Texas, 109; Union Trust Co. v. Ill. Mid. R. R. Co., 117 U. S., 434.

*A. N. Gossett, F. H. Prendergast, T. S. Miller* and *A. H. Mc-Knight,* for Orient Trust Company.—A final judgment rendered by the court at one term can not be changed or modified by the court at a subsequent term. Rev. Stats. art. 1339; Hedgecoxe v. Com'r, 43 S. W., 322; Petrucio v. Seardon, 76 Texas, 539; Laclede Bank v. Betterton, 5 Texas Civ. App., 355; United States & Mex. Tr. Co. v. Young, 46 Texas Civ. App., 117; Re Woerishoffer, 75 Fed., 335, 21 C. C. A., 375.

The decree of September 21, 1904, except as express reservations of jurisdiction and control were made therein, was a final judgment. It settled the primary rights of the parties, leaving detail to be adjudicated under the reservation. Western Sup. & Manuf. Co. v. United States & Mexican Tr. Co., 41 Texas Civ. App., 478; Central Trust Co. v. Grant, 135 U. S., 224; Central Trust Co. v. Madden, 17 C. C. A., 236; Re Woerishoffer, 21 C. C. A., 375.

The order of June 20, 1907, was made as a final judgment fixing the plaintiff's status as to its allowances in accordance with the original decree and fixed the amounts of such allowances up to that time and so far as the court could fix the same. Jones v. United States & Mex. Tr. Co., 47 Texas Civ. App., 430; Western Sup. & Mfg. Co. v. United States & Mex. Co., 41 Texas Civ. App., 478; Trustees v. Greenough, 105 U. S., 527; Williams v. Morgan, 111 U. S., 684; Re Woerishoffer, 21 C. C. A., 375; Gordon v. Newman, 10

C. C. A., 587; Central Trust Co. v. Madden, 17 C. C. A., 236; Petersburg Co. v. Dellatorre, 17 C. C. A., 310; Alderson on Receivers, sec. 613, p. 834.

The receiver's certificates, having no higher standing than that given them by the orders of the court pursuant to which they were issued, are subject to the final adjudications of the decree of September 22, 1904, and all further final adjudications made thereunder, including the allowance decree of June 20, 1907. Anderson v. Condict, 35 C. C. A., 335; Bank of Commerce v. Central C. & C. Co., 115 Fed., 878; Jones on Corporate Bonds and Mortgages, sec. 556; Alderson on Receivers, secs. 333, 340, 342 and 343, p. 470; Short on Railway Mortgages, sec. 690.

Purchasers of receiver's certificates are parties to the suit and as such must take notice of the progress of the case and the proceedings therein. Parish v. Alston, 65 Texas, 197; Bridgens v. West, 35 Texas Civ. App., 277; J. W. West Lumber Co. v. Lyon, 53 Texas Civ. App., 648; Gordon v. Newman, 10 C. C. A., 587; Anderson v. Condict, 35 C. C. A., 334; Columbus Ry. Co. Appeals, 48 C. C. A., 275; Bank of Commerce v. Central C. & C. Co., 53 C. C. A., 334; Re Woerishoffer, 21 C. C. A., 375; Petersburgh Ry. Co. v. Delatorre, 17 C. C. A., 310.

The plaintiff's action and its expenses and its attorneys and counsel services inured to the common benefit and use of all such persons, and, as such plaintiff, the appellant is entitled to payment out of the trust fund. United States & Mex. Trust Co. v. Young, 46 Texas Civ. App., 117; Jones v. U. S. & Mex. Trust Co., 47 Texas Civ. App., 430; Byrne v. First Nat. Bk. of Lake Charles, 20 Texas Civ. App., 194; Trustees v. Greenough, 105 U. S., 527; Central Ry. Co. v. Pettus, 113 U. S., 116; Cowdery v. Railway Co., 93 U. S., 352; Tompkins v. Chester Mills, 90 Fed., 39; Trust Co. v. Spartanburg Ry. Co., 97 Fed., 409; Sloan v. Mitchell, 18 C. C. A., 443.

*C. E. Carter,* for appellee, S. P. Jones.—The order of the court below, dated September 21, 1906, was a mere office order, and was subject to modification by the consent of the court and appellee. Texas L. & L. Co. v. Winter, 93 Texas, 560; Halbert v. Alford, 16 S. W., 814; Freeman on Judg., secs. 15, 29, 32 (A), 121, 142, 251; Black, Judg., vol. 1, sec. 308, page 384; vol. 2, 509 and 695; Perkins v. Fourniquet, 6 How., 209; Elwell v. Johnson, 74 N. Y., 80; Bank v. Lynch, 76 N. Y., 514; Kerchner v. Wood, 48 Mich., 199; Rose v. Gibson, 71 Ala., 35; Gage v. Eich, 56 Ill., 297; 13 Am. & Eng. Ency. Law (2d ed.), 24-25, and cases cited; Aetna Ins. Co. v. McCormick, 20 Wis., 265; Powell v. Jopling, 2 Jones (N. C.), 400; Wilson v. Tarbett, 3 Stew. (Ala.), 296, 21 Am. Dec., 637; McQuire v. Drew, 83 Cal., 225; Smith v. Shawhan, 37 Iowa, 533; Sellers v. Union Lumb. Co., 36 Wis., 398; Matter of Rose, 80 Cal., 166; Bentley v. Jones, 4 How. Pr., 335; Nolton v. Western Ry. Corp., 10 How. Pr., 97. "Orders" are not regarded as res adjudicata with same strictness as judgments. Union M. F. N. Bank v. Clark, 42 Hun, 92.

An order declaring amount of salary to receiver and solicitor is

within the control of the court, and may be modified or rescinded. State v. Alabama Ry. Co., 54 Ala. 139. The court may modify orders upon its own motion. Ryon v. Thomas, 104 Ind., 53; Barth v. Rosenfield, 36 Md., 604; Dabbs v. Dabbs, 27 Ala., 646; Cook v. Bay, 4 How. (Miss.), 485; Waring v. Turton, 44 Md., 535; Davis v. Roberts, 1 Smed. & M. (Miss.), 543; Kimball v. Alcorn, 45 Miss., 145; Ashe v. Moore, 2 Murph. (N. C.), 383; Roberts v. Cocke, 1 Rand. (Va.), 122; Commonwealth v. Beaumarchis, 3 Call. (Va.), 22; Topp v. Pollard, 24 Miss., 682; Miller v. Justice, 86 N. C., 26.

*Burgess, Hill & Burgess,* for McAlester Fuel Co. and Oklahoma Fuel Co.—The validity of the receiver's certificates depends entirely upon the order of the court authorizing their issuance; such order must be strictly construed, and certificates issued for any other purpose than that stated in the order are invalid and are not obligations against the estate in the receiver's hands. And the receiver's certificates held by the trust company were issued to pay off classes B and C claims and were by the terms of the order under which they were issued, made to take the place of said classes B and C claims, and to stand in the place and stead thereof. Stanton v. Alabama- & C. R. Co., 31 Fed., 587; Fidelity Ins. & S. D. Co. v. Shenandah Iron Co., 42 Fed., 377; 24 Am.· & Eng. Ency. of Law (2d ed.), 41; High on Receivers (1886), sec. 358d; Beach on Receivers (1891), sec. 384; Beach on Receivers (1897), sec. 406; Thompson on Corporations (1894) sec. 7183; Ellis v. Vernon Ice L. & W. Co., 86 Texas, 110; International & G. N. Ry. Co. v. Coolidge, 26 Texas Civ. App., 595; McIlhenny v. Binz, 80 Texas, 13; Missouri, K. & T. Ry. v. McFadden, 89 Texas, 138; Waters-Pierce Oil Co. v. U. S. Mex. Trust Co., 44 Texas Civ. App., 397; Beach on Receivers (1897), sec. 388; 24 Am. & Eng. Enc. of Law, vol. 24, page 30. The classification made by the court in this receivership was approved in U. S. Mex. Trust Co. v. Western S. & M. Co., 109 S. W., 377.

The rule is that the expense of administering and preserving the property is to be charged first upon the net income, and if that be not sufficient, then upon the property itself. Ellis v. Vernon Ice L. & W. Co., 86 Texas, 110; McIlhenny v. Binz, 80 Texas, 13; Anderson v. Condict, 93 Fed., 353; New York S. & T. Co. v. Louisville Ry., 102 Fed., 389-90.

*T. W. Davidson, Mell & Stephens* and *Warren & Briggs,* for interveners John Jones, R. D. Drigger, Albert Pippin, Jos. Hahn, Sr., Linus Oney, J. T. Jones, Gentry Hills Lumber Company, City of Marshall, Vickers & Brown, Southern Fuel Co., W. R. Smith, M. P. Green, S. C. Hort, John Wimbry, W. L. Whitley, Will Wilson, Paul Smith, A. A. Mattox, J. W. Robertson, Fred Easterwood, T. H. Oliver. It was error on the part of the court to class these receivers' certificates in the same class with the liabilities of the receiver. Rev. Stats., arts. 1472, 1475; Phillips v. Wise, 31 S. W., 428; Espuela L. & C. Co. v. Bindle, 11 Texas Civ. App., 262; Howe v. St. Clair, 8 Texas Civ. App., 101; International & G. N. Ry. Co. v. Coolidge,

26 Texas Civ. App., 595; Union Trust Co. v. Illinois Midland, 114 U. S., 457; Thomas v. Western Car Co., 149 U. S., 110; Missouri, K. & T. Ry. Co. v. McFadden, 89 Texas, 138.

*M. P. McGee*, for Y. D. Harrison, Master in Chancery, intervener. —The order fixing the master's compensation is nothing more or less than a temporary or interlocutory order, and was subject to modification by the court, or subject to be rescinded by the court at any time during the pendency of the receivership. Union F. M. N. Bank v. Clark, 42 Hun, 92; State v. Alabama Ry. Co., 54 Ala., 139; Ryon v. Thomas, 104 Ind., 53; Dabbs v. Dabbs, 27 Ala., 646

*F. H. Prendergast,* for interveners, Chicago & A. Ry. Co., Atchison, T. & S. F. Ry. Co., Midland Val. Ry. Co., Kansas City S. Ry. Co., Missouri P. Ry. Co., Chicago, R. I. & P. Ry. Co., Chicago, R. I. & G. Ry. Co., Chicago, B. & Q. Ry. Co., New York, N. H. & H. Ry. Co., Southern Pacific Co. and Western Supply & Mfg. Co.

*C. E. Carter,* for Wm. C. Johnson & Sons Mach. Co.

*Carey Abney,* for Collin County Mill & Elv. Co.

*Young & Stinchcomb,* for C. L. Taylor, receiver.—The fact that the court had set a salary for the receiver was only an order within the control of the court and not a final judgment; it was subject to modification or change, and the setting of a final compensation for his services was not due to be made until after his services had been rendered. Texas L. & L. Co. v. Winter, 93 Texas, 560; Freeman on Judgments, secs. 15, 29, 32 (A), 121, 142, 251; 1 Black on Judgments (1st ed.), sec. 308, p. 384, vol. 2, pp. 509 and 695; State v. Alabama Ry. Co., 54 Ala., 139; Ryan v. Thomas, 104 Ind., 53; In re Angell, 91 N. W., 611; Maxwell v. Wilmington, 82 Fed., 214; Ruggles v. Patten, 74 C. C. A., 450; Merchants Bank v. Coysler, 14 C. C. A., 444; Beach on Receivers, p. 834.

The same counsel filed brief for Herman Loeb, upon cotton concentration claim.

*Chilton & Chilton,* for J. W. Ogburn.

*Y. D. Harrison,* for Kniffin Fuel Co.

LEVY, Associate Justice.—Many intervening applications or motions of creditors were filed asking for orders of the court directing payment of their claims out of the fund realized from the sale of the railway properties under decree of foreclosure. More than twenty-five appeals were perfected from the ruling of the court, and there are numerous persons made appellees who file cross-assignments. The record is very voluminous, and it is only attempted to state such pertinent parts as are absolutely necessary to a proper disposition of the appeal.

The records show that the Texas Southern Railway is a line of railway approximately seventy-two miles in length, running through

Harrison, Upshur and Wood Counties.   On July 11, 1904, the United States & Mexican Trust Company, its name having since been changed to the Orient Trust Company, commenced this action in the District Court of Harrison County against the defendant, the Texas Southern Railway Company, to foreclose a certain mortgage given by the railway company to it as trustee to secure bonds of said railway company.   Before this suit was brought R. L. Jennings and W. A. Chatterton, general creditors of the railway company, each brought suit against it on debts and for appointment of a receiver. Such two other cases were consolidated with the case of the United States & Mexican Trust Company, but no hearing on either the Chatterton or Jennings application for receiver was had, but their claims were adjudicated.   A receiver was appointed on the application of the said trust company.   Its petition alleged the execution of the mortgage and bonds, and default in the payment of the same.   It then alleged a request of the holder of the majority of the bonds that the trust company as trustee should foreclose the mortgage; alleged default and breach of conditions of the mortgage, and that the railway company was insolvent and unable to pay its floating debt and current accruing indebtedness and wages of operatives, and that the railway company owed a large amount of such wages and its current expenses which it was wholly unable to pay; that its net revenues were insufficient, and that it was indebted to various persons upon prior liens and matters unsecured by lien, and was in arrears for the payment of wages of its employes for at least six months.   The prayer of the petition was for foreclosure of the mortgage and that the mortgaged property of the railroad be ordered sold and that the proceeds be applied to the payment of its debts, including allowances for the trustee's disbursements and expenses as trustee, including its attorney and counsel fees and reasonable allowances for its personal services as trustee; and upon foreclosure, after paying all the taxes and prior liens on the property, which it prayed to have ascertained, that the residue be applied to the payment of the bonds and that a receiver be appointed.   On this petition the court appointed S. P. Jones as receiver July 11, 1904, and in the order of appointment defined his powers, among other things, as follows: "(1) Said receiver is hereby directed to take on the 11th day of July, 1904, possession of all the mortgaged property as herein provided, and to preserve and protect all of said mortgaged property, acting in all things under the order of this court. . . . (3) The receiver is directed to pay all balance due or to become due to other railroads, or transportation companies, growing out of the exchange of traffic.   (4) Said receiver is further ordered and directed to pay all taxes on said mortgaged property as the same shall mature, and also all of the current expenses growing out of the operation and maintenance of the said road, and to collect all the revenues thereof."

On September 22, 1904, a final judgment was rendered by the court fixing the status of debts and the character of debts to be paid in preference out of proceeds of sale, and foreclosing the mortgage and appointing and directing P. M. Young a special commissioner to make sale of the mortgaged property under said decree.   The

decree directed sale to be made on the first Tuesday in December, 1904. For want of bidders at that time there was a failure of sale. A subsequent date of sale was fixed by order of the court. From and after the failure to sell in December, 1904, the court continued to operate the road under the receivership as he did before the order of sale. S. P. Jones resigning as receiver, C. L. Taylor was on October 1, 1906, appointed as his successor, and continued to operate the road, under order of the court, until its sale. On the 15th day of August, 1908, a date fixed by the court, the Texas Southern Railway properties were sold under the final decree of foreclosure of 1904, and at such sale the railway properties were bought in, by the highest bidder, for the sum of $286,000. The sale was confirmed by the court. At the time of the sale there was outstanding indebtedness, which had been actually incurred by the receiver subsequent to his appointment and during his receivership in the necessary operation and preservation of the property, in the aggregate sum of about $110,000. This indebtedness incurred by the receiver consisted, topically arranged, of accounts unpaid and owing as taxes, machinery appliances and material, fuel, labor performed, traffic balances due other railway companies, rental of engines and cars, repairs to cars, freight and passenger overcharges, loss and damage to freight and cars by operation and by fire, cotton concentration charges prepaid by shippers, claims and judgments to persons and property, stationery and printing, bridge-timber and ties, rent of terminal facilities, court costs in suits, and salaries of the receiver and master in chancery, attorney's fees, and incidental expenses in the operation. There were also due allowances by the court to court officers in the receivership. There was also due on the receiver's certificates held and owned by the St. Louis Union Trust Company, as principal and interest, approximately $191,000. There was also due about $33,000 on a judgment in favor of F. M. Hubbell on vendor's lien notes against certain of the right of way. There was also due a substantial moneyed judgment against the railway company with a lien on the property in favor of the Orient Trust Company, plaintiff in the action, for its attorney's fees and compensation as contracted to be paid in the deed of trust. There were other items of indebtedness, not incurred by the receiver and not complained of in this appeal. Besides all of this indebtedness there was the indebtedness of the bonds, to secure which the mortgage on the railway properties was executed. The aggregate amount of indebtedness at the time of the sale, exclusive of the bonded indebtedness and the indebtedness of the railway company not here complained of, exceeded the fund realized from the sale of the railway properties approximately $71,000. At the October term, 1908, following the sale of the road, the court, after setting a day of the term for such hearing, proceeded to try the various motions or interventions of the creditors for payment of their claims out of the fund of the sale. On November 21, 1908, the court entered its order on such motions, and the appeal is from such order.

*After stating the case.*—The contention here is between creditors

of the receiver having demands growing out of and incident to the necessary operation of the road by him as receiver, and the holders of receiver's certificates. Specifications of error, by assignments and cross-assignments, challenge the orders of the court made, on the intervening motions or applications filed for orders for payment out of the proceeds of sale of the railway properties, in directing payment out of proceeds of such sale of the receiver's certificates held by the appellant trust company on equality and in the same class with operating expenses incurred by the receiver as such during his management and control of the railway. The certificate holders make the contention that by the terms of the order of the court authorizing the issuance of these certificates they had a first lien upon all the proceeds of the sale of the railway properties, and hence were entitled to be paid out of such fund in priority to the operating expenses incurred by the receiver. Such creditors of the receiver contend that they are entitled to be paid out of such fund in rank and priority ahead of the certificate holders, and that their legal and equitable right for such rank and priority rests upon express decree of the court fixing the primary right and status and rank in the final decree of foreclosure and sale of the railway. The specification of error stated, which is based on proper assignment, involves the determination of whether all the claims of the creditors mentioned are properly entitled to be classed as operating expenses of the receiver. The court makes the findings that such creditors are the creditors of the receiver, "and that such debts were all contracted and created during the receivership and are just charges against the same for the respective amounts therein set forth, and that all of said debts grew out of and were incident to the operation of the road in the hands of said receiver." These debts of the receiver incurred by the receiver in his necessary operation of the road covered, it appears, the last twelve or fifteen months of its operation. The finding by the court is admitted by the record. Such debts consisted, topically arranged, of fuel, car repairs, supplies and material, car rentals, rentals of terminal facilities, loss and damage to freight and cars by fire and by operation, costs of depositions in suits, shop machinery, hospital account, board due section men, insurance on property, overcharges in freight shipments, certain taxes, cotton concentration charges prepaid by shippers, stationery and printing, ties and bridge-timber, labor, traffic balances due other railroads, and claims and judgments for killing stock and for personal injuries. The items for fuel and car rentals constitute the bulk of this indebtedness. It can not be said, as a matter of law, that the several demands mentioned did not grow out of and are not expenses necessarily incident to operation of the railroad. The following are entitled to be legally classed as items of operating expenses: Car rentals, Kneeland v. American L. & T. Co., 136 U. S., 89; Thomas v. Western Car Co., 149 U. S., 95. Cars destroyed by fire, see Grand Trunk Ry. Co. v. Central Vt. Ry. Co., 88 Fed., 636. Rolling stock, equipment and traffic balances due other roads, Miltenberger v. Logansport Ry. Co., 106 U. S., 286. Damages for injuries to persons or property during receivership caused by torts of the servants

of the receiver, Ryan v. Hayes, 62 Texas, 49; Green v. Coast Line Ry. Co., 24 S. E., 814; 24 Am. & Eng. Ency. Law, p. 31; see Anderson v. Condict, 93 Fed., 349; South Carolina & G. Ry. Co. v. Caroolina, C. G. & C. Ry. Co., ibid., 543. The nature of the claim of the Western Supply Company, a claim in this list of demands, is stated in the appeal of that case in 109 S. W., 377. That portion of this claim adjudicated in class A as a demand against the receiver is here. The court ordered the receiver in that case to take the supply company's rails and sell them, and the receiver did so and then used the proceeds in the operation of the road. The cotton concentration claims, as they are called in the record, of Loeb and others, are of the same class as the claims above mentioned. The receiver used these special funds deposited with him by these parties in the operation of the road. As a tort of the receiver as such the court had the power and was warranted in classifying these several demands as charges of the receivership and payable as such out of the corpus sale. A judgment against a receiver for his conversion of special funds of individuals in his possession as receiver into operating expenses of the road is as much entitled to be classed and paid as a charge of the receivership as are demands based on negligence from operation. The nature of the demands is the same. It appears from the record, and is admitted, that the fund realized from the sale of the railway properties under the decree of foreclosure was insufficient to pay in full all creditors entitled to participate in its distribution ahead of the bondholders. The bondholders do not appeal, and make no contention here. The court made the finding, and the fact is admitted, that during the operation of the road by the receiver, which was under orders of the court, the operation did not earn or make any net earnings, and that in the actual operation of the road by the receiver a net loss was incurred by him over and above the revenues of the operation of the road. In the light of the authorities it is the settled general rule of law that the court has the power, as regards indebtedness incurred by the receiver himself as necessary operating expenses of the railway while in his custody, as in this case, where the receiver's income proves insufficient to satisfy his indebtedness, as shown by the record in this case, to direct the payment of the residue out of the proceeds of the foreclosure sale before a distribution is made to creditors and lienholders of the railway company. Alderson on Receivers, sec. 320; High on Receivers, sec. 394b; 24 Am. & Eng. Ency. Law, p. 30; 3 Cook on Corporations, sec. 875; 1 Elliott on Railroads, sec. 580; 5 Thompson on Corporations, 7119; Ellis v. Vernon Light Co., 86 Texas, 109, 23 S. W.; 858; McIlhenny v. Binz, 80 Texas, 1, 13 S. W., 655; Union Trust Co. v. Midland Ry. Co., 117 U. S., 437; Kneeland v. American L. & T. Co., 136 U. S., 92; Kneeland v. Bass, 140 U. S., 592.

In the case of Ellis v. Vernon Light Co., supra, our Supreme Court says: "Accordingly, the rule is that the expenses of administering and preserving the property is to be charged, first, upon the net income; and if that be not sufficient, then upon the property itself or its proceeds upon sale." Further, in the case of McIlhenny v,

Binz, supra, the court uses this language: "The expenses of operating the railroad while in the hands of the receiver have been uniformly allowed, and it would seem that as to claims of this class there should never have been any serious difficulty. Being the expenses of administering the trust fund, they should be a first charge upon its funds, and should be awarded priority of payment." But it is to be understood that this rule only admits and concedes the equitable power of the court to direct the payment of such character of indebtedness out of the proceeds of sale. It is not to be understood that the right of such creditors of the receiver to be preferred and paid out of the corpus sale arises by operation of law and independent of the order of the court. On the contrary, the right of such creditors of the receiver, for claims of operating expenses, to be preferred in prior payment to lienholders out of the proceeds of sale of the corpus, flows from an equitable situation and arises from the order of the court so to be preferred and paid, and does not arise by operation of law. High on Receivers, sec. 394b; Alderson on Receivers, sec. 328; Missouri, K. & T. Ry. Co. v. McFadden, 89 Texas, 138, 33 S. W., 854.

In the latter case our Supreme Court uses this language: "The court appointing a receiver to take charge of and control a railroad may make the liabilities incurred by him a charge upon the corpus of the property, and upon sale may direct their payment from its proceeds; but the charge so created proceeds from the order of the court, and does not arise by operation of law." This reduces the question, as between the certificate holders and such named creditors of the receiver, as to whether in this case the receiver's operating expenses should be paid out of the proceeds of the sale of the properties of equal and common rank or in priority of the certificates. The question, as between themselves, must necessarily be determined under the record in the case from the decree and orders of the court made in respect thereto. The decree and order of the court that must control and determine the question between them are, we think, the final decree of foreclosure and the order authorizing the issuance of the certificates. As only one final judgment can be made in the case, the decree of foreclosure, under which the sale occurred, must be held to be the final judgment in the case. Such decree was not set aside or vacated, but .executed by an order of sale, and there was no complaint by the parties in respect thereto. This decree of foreclosure, as later discussed, expressly fixed and determined the primary right and rank and class that the character of claims against the receivership and the property were to occupy and have in regard to payment out of the proceeds of sale, and expressly fixed and determined the class that operating expenses of the receiver were to occupy and have in such distribution of the proceeds of sale, failing the sufficiency of income by operation. The order of the court authorizing the issuance of the receiver's certificates also expressly fixed and determined and graded the class and status, as later discussed, that the certificates were to have and occupy in regard to their payment out of the proceeds of sale. The sale of the property was had under such decree, and the sale was confirmed by the court, and title was

ordered made to the purchasers of the road. This decree of fore-
closure being final, there is involved the power of the court there-
after to set aside such classification that the various characters of
indebtedness were to have, there being no proceedings to set aside
or vacate such previous decree. The order of the court from which
the appeal is taken therefore, as between the certificate holders and
the receiver's operating expenses named, to be regarded and consid-
ered in this appeal as being an order, within his power, denying the
motion of each of such creditors to have his indebtedness placed for
payment in the proper class previously determined that such character
of indebtedness should have and occupy in payment out of the pro-
ceeds of sale.

As before stated, it must be held in this case, we think, that the
decree of foreclosure as finally made by the court expressly fixed the
rank and classified for payment out of the proceeds of sale as a
preferred indebtedness the operating expenses of the receiver in this
case. The decree recites: "And for purposes of convenient classifi-
cation in this decree and proceedings thereunder of the rank and
order of priority of their respective liens and rights to payment from
the earnings of the receiver and proceeds of the sale of the mortgaged
properties, it is now ordered that such persons and their demands
be and they are now classified as follows:   (1) Class 'A,' in which are
included and classified the persons and demands entitled to be paid
from the earnings of the receiver, as part of his operating expenses
and charges, and failing the sufficiency of same then first from the
proceeds of the sale aforesaid; (2) class 'B,' in which are included
and classified those next entitled to be paid from the proceeds of
said sale; (3) class 'C,' in which are included those next entitled to
be paid from the proceeds of the sale remaining after payment of
the above classes." The other classes, D. and E, are not set out,
as not material at this point.

In pursuance of this classification in this decree, there were ad-
judged and assigned to their respective classes, the following:   To
class A claims amounting to $70, which the receiver was ordered to
pay out of the earnings as a part of his operating expenses; to class
B a large number of labor liens, owing by the railway company
prior to the receivership, were adjudicated and assigned, aggregating
$81,500; to class C a large number of materialmen's liens, owing
before the receivership, aggregating $27,500; to class D the bonded
indebtedness to secure which the mortgage was given; to class E a
large amount of unsecured indebtedness of the railway incurred prior
to the receivership. Reservation of jurisdiction was made in the
decree, for purposes of making adjudication of demands pending and
not then adjudicated, and those that might thereafter be filed. The
decree further directs sale of the mortgaged property, and then pro-
vides: "It is further ordered, adjudged and decreed that out of the
proceeds of said sale there shall be paid, so far as same shall suffice
(1), the costs and expenses of this action, including any and all
allowances that the court may hereafter make and order; (2) the
liens allowed and classified in class 'B,' as hereinbefore provided,

shall next be paid; (3) the demands allowed and classified in class 'C,' as hereinbefore, shall next be paid."

But the other classes are not here set out, as immaterial. The receiver's certificates here represent these B and C claims. This decree directed sale of the mortgaged property to be made on the first Tuesday in December, 1904. It appears that the sale failed for want of bidders at such sale. After this failure to sell the road then the court issued its order for issuance of these certificates in question. The record shows that various subsequent dates of sale were fixed by the court. The original decree was never set aside, and sale under the decree occurred on the first Tuesday in August, 1908. It appearing that the court in the final decree of foreclosure had finally classified and fixed the rank and priority of operating expenses of the receiver, payable out of the proceeds of sale, in class A as a preferred indebtedness, the next question then is, did the subsequent order of the court authorizing the issuance of certificates by its terms so change or modify this particular classification in the decree as to reduce the indebtedness of the character of operating expenses of the receiver to a lower status, or prefer the certificates to such character of indebtedness? If such was not the legal effect and force of the order, and we think it was not, then it follows as a fact conclusively shown in the record that the final decree of foreclosure was not changed or modified by the court as to classification of claims and rank of payment. The sale having failed to occur for want of a bidder, the court on the 21st of December, 1904, in vacation, upon application of the receiver duly made, authorized the receiver to issue and sell for the purpose of paying said indebtedness then due to laborers and to mechanics and materialmen, which indebtedness accrued prior to the appointment of the receiver and which had been classified in the decree as classes B and C, $150,000 of receiver's certificates. On February 6, 1905, it being the regular term of the court, an order was entered approving and confirming the vacation order as to receiver's certificates, and the certificates were issued and sold by the receiver, and the proceeds thereof received by him. The order directing the issuance of the certificates recites: "And it appearing to the court that there are a large number of debts due to laborers who labored for the Texas Southern Railway Company before the receiver in this case was appointed, and it also appearing that there are a large number of debts due for supplies and materials furnished the Texas Southern Railway Company, accruing before the receiver in this case was appointed, and which have heretofore been heard by the court and classified as being in class 'B' and class 'C' which are prior liens to the bonds sued on, and so adjudged by the court; and it further appearing to the court that it is very necessary to pay all of such creditors at an earlier date than a foreclosure sale can be had, it is, therefore, ordered and decreed by the court that S. P. Jones, receiver herein, be and is hereby empowered and authorized to borrow money in a sum not to exceed $150,000, as may be necessary to pay said claims in class 'B' and class 'C,' and for which said sum of money to issue receiver's certificates or debentures to bear interest at the rate of six percent per annum

from this date until paid, and said interest to be paid semiannually and to be so stated on the face of said certificates. . . . It is further ordered that the certificates or debentures when issued shall become and hereby declared to be a first lien upon all the railway, franchises, property and rights of the defendant, the Texas Southern Railway Company, including all of the constructed railroad, rolling stock, equipment, right of way, tools, machinery, appliances and appurtenances thereto belonging, and all other property of every kind, character and description, wherever situated, the said certificates to be the same in legal force, effect and standing and dignity as the laborer's liens and material liens under the Texas statutes, and in the foreclosure sale of said railway under the decree of foreclosure in said sale, and shall stand in the place and in the stead of class 'B' and class 'C' claims, and shall be payable out of the proceeds of said sale, with preference and priority the same as the claims in class 'B' and class 'C' would be, which said certificates hereby authorized represent and are used as a form of payment of."

All these certificates were approved by the Railway Commission of Texas (art. 4584h, Rev. Stats.), and sold to the appellant, and have ever since been held and owned by it. The power of the court to authorize issuance of certificates for this character of railway indebtedness is not here questioned, if indeed it could properly be. It is a settled rule of law that receiver's certificates, being the creation of the court, have just the effect, and are of no further or greater effect than given by the order of the court authorizing the issuance thereof, and purchasers of the certificates are charged with notice of the provisions of such order. Alderson on Receivers, secs. 333-40-42-43; 5 Thompson on Corporations, 7183; High on Receivers, sec. 398c; 3 Cook on Corporations, sec. 877; 1 Elliott on Railroads, secs. 592-5; see Gordon v. Newman, 62 Fed., 686; In re Woerishoffer, 75 Fed., 335; Anderson v. Condict, 93 Fed., 349; Bank of Commerce v. Central Coal Co., 115 Fed., 878. It must be conceded, as it is, that the order of the court authorizing the issuance of the certificates created a lien in favor of the certificate holders on the railway property. But the question here is not, we think, whether a lien was created by the order, but whether the certificates, by the terms of the order authorizing their issuance, are made payable out of the proceeds of sale first before the payment of the operating expenses incurred by the receiver in the operation of the road while in his custody. Emphasis and stress is placed by the certificate holders upon the words "first lien" in the order. The order, we think, must be construed as a whole, and not in part, in order to give it its proper effect. It is evident, we think, that such order of the court properly construed means to give, and did give, such character and extent of lien and upon the same terms to the certificates as would maintain and continue such prior rights to the certificates as theretofore provided in the final decree of foreclosure for labor and material liens that they were used as a form of payment of, and to rank and classify the certificates as payable out of the proceeds of sale in the same rank and priority and class theretofore given such indebtedness of B and C claims, which was first as to the mortgage

bonds, but not in preference above or exclusive to all claims for operating expenses incurred by the receiver in class A. The order recites "a first lien . . . in legal force, effect and standing and dignity as the laborer's liens and materialmen's liens under the Texas statutes . . . which said certificates hereby authorized represent and are used as a form of payment of."

The order expressly recites its purpose and object to be to authorize the issuance of the certificates as a means of paying off the labor and material liens "heretofore heard by the court and classified as being in class 'B' and 'C,' which are prior liens to the bonds sued on, and so adjudged by the court." Such order expressly provides as to the plane and rank the certificates should occupy and extend as a lien on the proceeds of the sale, "and in the foreclosure sale of said railway under the decree of foreclosure in said cause, and shall stand in the place and stead of class 'B' and 'C' claims, and shall be payable out of the proceeds of said sale, with preference and priority to the same as the claims in class 'B' and 'C' would be, which said certificates hereby authorized represent and are used as a form of payment of." All of which language clearly imports and means that the court did not intend to give and fix such lien for the certificates as meaning without intervening liens or claims whatsoever between it and the fund of the sale. The distinctions between this case and other cases in which the lien of the receiver's certificates was not limited or was otherwise limited may clearly and readily be observed. It is quite unnecessary to cite authorities to support the statement that if a receiver's certificate is issued generally, it stands in the same class as the receiver's general obligations. It is also a well understood principle of law that if certificates are issued with a limited liability, and payable only in a certain way and rank, they can be payable in no other way. 3 Elliott on Railroads, at p. 3140. See Anderson v. Condict, supra.

The effect of the order in the instant case was, as much so as if the very words in the above case were used, to grant to the certificates a lien paramount to the mortgage in suit, subject, however, to the payment of "operating expenses and charges" of the receiver. Certificates may be subordinate to other claims against the receiver. International & G. N. Ry. Co. v. Coolidge, 26 Texas Civ. App., 595, 62 S. W., 1097. There is a clear distinguishment between the instant case and Kampmann v. Sullivan, 26 Texas Civ. App., 308, 63 S. W., 173, cited. The order in the latter case recited, "It is ordered that the said three certificates shall be a first lien upon the entire property." Here the order recites, "shall become and are hereby declared to be a first lien upon the railway and property . . . in legal force, effect and standing and dignity as the laborer's liens and material liens under the Texas statute . . . which these certificates represent and are used as a form of payment of." Further, the order in that case provided for preferred payment as "and shall be given priority in payment over any other liens or debts of any and every class or kind now existing or that may hereinafter arise . . . while this receivership is pending." The very terms of such order made the preferred payment exclusive and superior to operat-

ing expenses and other claims of the receiver. In the instant case the certificates were classified in rank and preference of payment as "and in the foreclosure sale of said railway *under the decree of foreclosure in said sale* the certificates to stand in the place and stead of class 'B' and class 'C' claims, *and payable* out of the proceeds of said sale with *preference and priority the same* as the claims in class 'B' and 'C' would be, which these said certificates represent and are used as a form of payment of." It is the exclusive terms of the order in the Kampmann case, it is seen, that is the controlling feature of the case. The opinion says creditors "extended credit to the insolvent railroad after the order of the court fixing the lien of the receiver's certificates had been made, and are chargeable with full notice of such lien." By this it was evidently meant to rule that because of the exclusive terms of the certificate order subsequent creditors of the receiver could not claim an equitable standing in priority of the certificates. It would have been inequitable for such creditors to be preferred to the certificates. The opinion expressly states that "no order of the court was ever entered giving the gas company any preference lien," and further it appears that the only classification or order the court made on such creditors was subsequent to the issuance of the certificates. In the instant case receiver's expenses, and their being paid out of the corpus failing the sufficiency of the income of operation, were sanctioned by the court in advance of the issuance of the certificates. The equities of the two cases are essentially different.

The order of the court authorizing the issuance of the certificates in question recites "that it is very necessary to pay all of said creditors at an earlier date than a foreclosure sale can be had." The sale of the road under foreclosure having failed for want of bidders, it must be assumed by such recital that the court, the railway being in the control and under the operation of the court through a receiver, contemplated and intended at the time that such operation would continue for an indefinite time. The holders of the certificates, it must be held, took them with such knowledge, and in contemplation that the road would be so operated under orders of the court, and that the court had the power so to do "although said continued operation may involve the danger of some loss." (Ellis v. Light Co., supra.) The previous classification in the decree of foreclosure, looking to an early sale, was existing and not modified at the time of the order made for certificates. This classification specifically provided that "operating expenses and charges" of the receiver should be paid in preference of other debts from the proceeds of sale, failing the sufficiency of the income of operation. Finding that it was contemplated and intended that the road should be continued to be operated by the receiver, and that the previous order of the court directing payment of the residue of operating expenses in class A as a preferred debt out of the proceeds of sale was retained and continued in force by the court at the time of his order for certificates, and that the court's order for certificates limited the certificates to payment, after operating expenses and charges, in classes B and C, it follows, we think, that it must be ruled that the court

not only intended to reserve the power to prefer the expenses and charges of operation which it would assume, but did expressly exercise such power of preferment at the time by the terms of the order authorizing the certificates. If the receiver's expenses of operation, and their being paid out of the corpus failing the sufficiency of the income of operation, were sanctioned by the court, as it was in the decree, in advance of issuance of the certificates, then the fact that the earnings of operation failed to meet all necessary expenses and charges incident to running the road, and that such class of debts constitute a large amount of money, is not referable as a reason or ground in aid of the advancement of the certificates to a rank above such operating expenses and charges. The court having the power to continue the operation, such loss, arising from operation, must be attributable solely to practical results of the venture or chance of operation. The certificate holders contemplating the operation of the road took the certificates, in the terms of the order authorizing their issuance, subject to such practical results of loss in operation.

The court during the time of the operation of the road entered an order directed to the receiver to cease making improvements, and that no further expenditures be made except strictly operation and repairs, "and the receiver is especially ordered and instructed that said operation expense shall not exceed eighty percent of the gross earnings per month of the said railroad." This order was made a year after the order for the certificates. The trial court makes the finding that this order "was intended only as an economic order directed against the receiver only, and was not intended and did not operate against the creditors of the said receivership who thereafter furnished goods, wares, labor or supplies in good faith to said receivership, and that said order did not have the effect of postponing any of the debts in payment, as equity should require, in the event the eighty percent was insufficient to pay all of the operating expenses, and I find that all such debts and obligations contracted by the receiver, since said order, are not in the least affected by said order as to payment out of the proceeds of sale of the property." The certificate holders' contention in respect to this order is overruled. The rights and standing of the certificates were fixed and determined by the order of the court authorizing the certificates, which was prior to the order in question. The order was economic, and directed by the court against the receiver, and not intended, as the court finds, to operate against the creditors who thereafter furnished goods, wares, labor or supplies in good faith to said receivership.

The certificates for $7000 issued under the order of September 21, 1905, are not questioned here by a specific assignment of error, and they are left in the classification placed by the court, along with the operating expenses. These certificates are based on a different order of the court, which recites that they were issued to enable the receiver to purchase certain rolling stock as necessary to the operation of the road.

The trial court having found that all the claims in question, classed as operating expenses, were just charges and were operating expenses of the receiver as such, it having previously classified such character

of claims in rank and priority of payment out of the proceeds of sale in preference to the certificates in question, and having limited the receiver's certificates to payment after such operating expenses and charges were paid, it was error, we think, to refuse the motion to direct their proper payment as previously classified and ordered. This ruling disposes of assignments Nos. 1, 2, 3, 4, 11, 12 and 16 of the St. Louis Union Trust Company, certificate holders, and the assignments and cross-assignments of McAlester Fuel Company, and many others too numerous to specify.

The seventh and tenth assignments of the St. Louis Union Trust Company are overruled. As before stated, the rights of claimants to pay for operating debts were fixed by the decree of record, and the rights and standing of the certificates were fixed and determined by the order of the court authorizing the same. Consequently, the *nunc pro tunc* entry of the practical order complained of did not legally operate to the prejudice of the rights of the certificates, and is not reversible error.

The St. Louis Union Trust Company by its thirteenth, fourteenth, fifteenth, seventeenth, eighteenth, twentieth, twenty-first and twenty-second assignments presents for error certain allowances made by the court to each the attorney for the receiver, to the master in chancery and to the receiver, and directing their payment as "court costs." The court at the time of the appointment of this receiver and his attorney entered an order providing for compensation, payable monthly. The same kind of order was entered as to the pay of the master in chancery. After sale and confirmation, and on application therefor, and upon proof, the court made additional and final allowances to these officers out of the proceeds of sale. It is the contention of the certificate holders that these previous orders of the court as to salary were conclusive, and that other allowances were unwarranted by law. The court on much proof determined the amounts of the allowances, and finds they were reasonable and the services performed were worth the amounts. We can not say, as a matter of law, that the allowances are unreasonable or excessive. The court specially finds as to the previous order declaring salary to the attorney Jones, that it was not intended by such order and its entry to cover and include compensation to him for services in certain suits and character of litigations then pending against the receivership, and that such salary did not include pay to him for services in such suits, and that the present additional allowances were as compensation entirely for services in respect to these cases and trials. If the court had the power, and it must be ruled he did, when he came to finally dispose of the receivership cause, to modify former interlocutory orders as to pay of officers of the court and to render such final orders for pay to its officers as in his opinion the rights and services of such parties demanded as proper, then no reversible error or complaint, the allowances being proper and reasonable, could be predicated on the exercise of such power by the court, and the discussion need not proceed further. The former order of the court declaring salary, payable monthly, was an order within the control of the court and not conclusive as a final judgment, it must be ruled, and was subject to

modification by the court, and the court had complete power to modify and enlarge same. State v. Alabama & Chat. Ry. Co., 54 Ala., 139; Farmers L. & T. Co. v. Central Ry. Co., 8 Fed., 60; In re Angell, 91 N. W., 611; 1 Black on Judgments, sec. 308; Ibid., vol. 2, 509, 695; Beach on Receivers, 834; High on Receivers, sec. 783. And see Texas L. & L. Co. v. Winter, 93 Texas, 560, 57 S. W., 39. It was in the sound discretion of the court to make the extra allowances at all. The court having made such allowances, it was properly within his power to direct their payment out of the proceeds of sale as "court costs." Louisville, E. & St. L. Ry. Co. v. Wilson, 138 U. S., 501. This ruling disposes of all the assignments mentioned.

By the nineteenth assignment it is contended that there was error in making allowance to C. F. Adams, clerk of the court, in the sum of $300. The proposition is, "It is contrary to the law and public policy to make extra allowance for care of papers, trouble and annoyance" to the clerk of the court, whose fees are fixed by law. There are no findings of the court in this respect, and we are unable to say upon what precise ground the allowance was made by the court. We must, as is proper, indulge the presumption that the allowance was upon grounds and for a claim authorized by law, in order to support the judgment. Referring to the application of Mr. Adams, it is there alleged that he was specially appointed by the court as custodian of the purchase price of the railway property and to assist the commissioner of sale in the proper disbursement of the money. This was a special duty in the case, and not among his regular duties required of him by law as clerk; and if the allowance was to pay for such special and independent duties, as we must assume it was in the absence of a contrary finding by the court, the allowance was not illegal.

The sixth assignment of the appellant trust company presents error as to the allowance of the claim of F. M. Hubbell, called the "Kern Equipment," on a pro rata basis with the certificates. This question is disposed of against appellant in the ruling in the appeal of Hubbell this day decided and here referred to.

The eighth and ninth assignments of the appellant trust company present error as to allowance of the demands of Hubbell for engine and tie notes, as they are called, as items of receiver's obligations on equality of payment with its certificates. The court's findings that these claims were necessary operating expenses, as purchase of engines and ties, they were proper items to be allowed as operating expenses and to be paid as such. Estoppel of prior payment could not be predicated or effectuated. The assignments are overruled.

The fifth assignment of appellant trust company presents error as to allowance of the "vendor's lien" demand, as it is called, of Hubbell on equality of payment with the certificates. This identical question between Hubbell and appellant trust company is decided in the appeal of F. M. Hubbell, intervener, this day decided and here referred to.

The order of the court appealed from is reversed and here reformed and rendered that after paying all "court costs" as specified in the order, and all taxes due by the receiver, State, county, municipal and school, next there shall be paid in full the obligations and demands

of the receiver incurred in and incident to the operation of the road while in his custody, as specified in the decree in class A and determined in this opinion, and prior to all other debts; and next after there shall be paid, and failing the sufficiency therefor the same to prorate, the receiver's certificates issued under order of the court of February, 1904. The judgment on demands of car rentals and loss of cars due the M., K. & T. Ry. Co. et al. is reversed and remanded for determination of the amounts due. The costs of appeal are taxed against appellant, the St. Louis Union Trust Company.

*Reformed and rendered.*

Writ of error refused.