St. Louis Union Trust Co. v. Wabash, C. & W. R. Co., 244 Ill. App. 422.

The purported bill of exceptions shows that it was presented to the trial judge on October 19, 1926, and was signed by him on November 29, 1926. The judgment was rendered on September 24, 1926, and the common-law record shows that 60 days were allowed for the filing of a bill of exceptions. In the purported bill of exceptions there is a statement that 90 days were allowed for the filing of the bill of exceptions. If it was not filed with the clerk of the circuit court until February 15, 1927, it is not properly a part of the record. *Zbinden v. DeMoulin*, 243 Ill. App. 509. In the state of the record there is no issue for this court to try and the appeal is dismissed at appellant's costs.

*Appeal dismissed.*

---

## St. Louis Union Trust Company, Appellee, v. Wabash, Chester & Western Railroad Company et al. Illinois Central Railroad Company and Yazoo & Mississippi Valley Railroad Company, Appellants.

1. RAILROADS—*what claims are part of the operating expenses.* Claim of a railway company for interline freight, *per diem*, traffic claims and miscellaneous bills, against a railway company in the hands of a receiver for interline freight, collected by the latter road and due the claimant, and traffic claims and miscellaneous bills are to be considered as part of the operating expenses of the receiver.

2. RAILROADS—*what debts are prior to a mortgage upon.* Operating expenses of a practically insolvent railway company incurred to other railway companies by a mortgagee in possession with the consent of the mortgagor should be made a lien on the property prior to the mortgage.

3. RAILROADS—*operating expense claims as charge upon railway property.* That no net income is produced by a railway under operation of a mortgagee with consent of the mortgagor, will not prevent just claims for operating expenses being made a charge upon the property itself.

4. RAILROADS—*when operating expense claims are not defeated by foreclosure of property of.* Bondholders of an insolvent railroad company, in possession and operating it and receiving the income of connecting carriers, will not be permitted to defeat recovery by such connecting carriers of their earnings, by foreclosure and sale of the railway property securing the bonds.

Appeal by defendant from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1926. Reversed and remanded with directions. Opinion filed May 14, 1927.

CHARLES E. FEIRICH and EDWARD C. CRAIG, for appellants; W. S. HORTON, of counsel.

GEO. B. GILLESPIE, for appellee; GILLESPIE & GILLESPIE, of counsel.

MR. PRESIDING JUSTICE BARRY delivered the opinion of the court.

Appellee filed a bill to foreclose a mortgage upon the property of the Wabash, Chester & Western Railroad Company and a receiver was appointed on January 4, 1924. In 1920, the Southern Gem Coal Corporation became the owner of 90 per cent of the capital stock of the mortgagor, and $390,000 of the bonds secured by the mortgage in question. Mr. C. B. Cole and his associates were the owners of the remainder of the mortgage indebtedness, namely, $300,000. From that time until the appointment of the receiver Mr. Cole was president of the railroad company and the road was operated by the Southern Gem Coal Corporation. The railroad company was insolvent during all of that time. While the road was being operated by the Southern Gem Coal Corporation with the knowledge and consent of Mr. Cole and his associates an indebtedness accrued to the Illinois Central Railroad Company of $126,165.87. The greater portion of that amount was

for interline freight where the operators of the railroad collected money that was due and owing to the Illinois Central. The other items of the account consist of *per diem* traffic claims and miscellaneous bills. The entire claim would be considered as necessary operating expenses. During the same period a similar claim accrued to the Yazoo & Mississippi Valley Railroad Company to the amount of $3,063.52.

The operation of the Wabash, Chester & Western Railroad Company has been a losing proposition from the date of its organization. It has never earned dividends for its stockholders and has been able to pay interest on the mortgage but for one or two years. From the time the Southern Gem Coal Corporation took over the operation of the railroad in 1920 there has been no net income.

After the appointment of the receiver appellants filed intervening petitions setting out the facts and asking the court, on several theories, to enter an order allowing their claims and making them a lien upon the property of the Wabash, Chester & Western Railroad Company, prior and superior to the rights and claims of the bondholders, the Southern Gem Coal Corporation and Mr. Cole and his associates. Upon a hearing the court found that the indebtedness to the appellants accrued and is due and owing from the mortgagor, but that no net income had been earned and that no portion of their claims should be made a prior lien to that of the mortgage, and the petitions were dismissed at appellants' costs.

If a receiver had been appointed in 1920 and the claims of appellants had accrued while the receiver was operating the railroad there can be no question that such claims would be considered as a part of the operating expenses of the receiver, and no net income having been earned, it would have been proper for the court to make the claims a charge upon the corpus and a prior lien to that of the mortgage indebtedness.

*St. Louis A. & S. R. Co. v. O'Hara,* 177 Ill. 525; *Knickerbocker v. McKindley Coal & Mining Co.,* 172 Ill. 535; *Knickerbocker v. Benes,* 195 Ill. 434; *Equitable Trust Co. of New York v. Chicago, P. & St. L. R. Co.,* 223 Ill. App. 445; *Whitaker v. Irons,* 206 Ill. App. 124.

That being true, we are at a loss to understand why the claims in question should not be given priority over those of the bondholders. One of the bondholders, The Southern Gem Coal Corporation, with the consent of all the other bondholders, Mr. Cole and his associates, and with the consent of the mortgagor, was in possession of and operating the railroad during the time that the claims in question accrued. That the claims are of such a character as would be considered operating expenses, there can be no serious question. *St. Louis Union Trust Co. v. Texas Southern R. Co.,* 59 Tex. Civ. App. 157, 126 S. W. 296; *Jackson Coal & Coke Co. v. Phillips Line,* 114 Va. 40, 75 S. E. 681.

It seems to us that it would be highly inequitable and unjust to permit a mortgagee in possession of the mortgaged property to operate that property and incur a large amount of indebtedness and having done so to then say to the creditors that the mortgage is a prior lien; that the property is not worth the amount of the mortgage indebtedness; and that nothing should be paid to them. We are of the opinion that a mortgagee who takes possession of the property and operates it is in no better position than if a receiver had been appointed and the road operated by him. Operating expenses, whether incurred by a receiver under the order of the court, or by a mortgagee in possession with the consent of the mortgagor, should be made a lien on the property prior to the mortgage.

It is quite evident that all of the bondholders were willing for one of their number to operate the railroad and keep it a going concern. The fact that no net income was produced by the operation of the road in

that manner ought not to deprive appellants of the money that accrued to them during that time.

Where a railroad was operated by two of the bondholders on behalf of themselves and their associates, the court held that the operating expenses which accrued during the time they so operated the railroad should be made a prior lien to that of the mortgage. The court said: "No authority has been cited or principle of equity suggested by counsel for complainant that will permit the bondholders of an insolvent railroad company who are themselves in possession of its property, operating the road and receiving the earnings of connecting carriers, as was done in this case, to defeat recovery by connecting carriers of such earnings by a foreclosure and sale of the mortgaged property securing the bonds." *Central Trust Co. of Illinois v. Chicago, A. & N. Ry. Co.*, 232 Fed. 936.

Appellee contends that the case last cited is not applicable. While the facts in that case are somewhat different from those of the case at bar, yet we think the principle there recognized is just and equitable and should control. It is also argued that for certain reasons appellants should be estopped from claiming priority. We find nothing in the evidence that would warrant us in holding that appellants should be barred by estoppel.

Other points are raised and ably discussed by counsel for the respective parties, but in our view of the case it will be unnecessary to further extend this opinion. The decree will be reversed and the cause remanded with directions to enter a decree making the claims of appellants liens upon the property of the mortgagor prior and superior to the lien of the mortgage sought to be foreclosed by appellee. The decree should provide that there should be no priority of the claim of one of the appellants over the other.

*Reversed and remanded with directions.*