THE ST. PAUL TITLE, INSURANCE AND TRUST COMPANY, *et al.*, Plaintiffs, Appellees, v. THE DIAGONAL COAL COMPANY, *et al.*, Defendants, Appellees. JOHN GUNSON, *et al.*, Interveners, Appellants.

**Laborers' Lien.** Where an attachment levy on the property of a corporation is abandoned, laborers who fail to file their claims with the sheriff are not prejudiced if they file them with the receiver, subsequently appointed, within thirty days after appointment. Chapter 48, Acts Twenty-third General Assembly.

SAME. Their claims take priority over bonds of the corporation secured by trust deed.

SAME. They are subordinate to the fees of a receiver and his attorney, but take priority over compensation due a trustee and his attorney for services in the foreclosure of a trust deed on the property of the corporation.

Practice on Appeal: COUNSEL FEES. An allowance to receiver's
6  counsel will not be held unreasonable, here, where it does not
appear what the services or their value were.

*Appeal from Jasper District Court.*—HON. D. RYAN,
Judge.

THURSDAY, OCTOBER 10, 1895.

Plaintiffs, the holders of the bonds of the Diagonal
Coal Company, on March 3, 1893, began an action in the
Jasper district court for a foreclosure of a mortgage
securing them.    In the petition it was averred that said
coal company was indebted to other parties in various
sums, aggregating twenty thousand dollars or over.
The necessary facts were alleged as grounds for the
appointment of a receiver, and on the same day W. H.
Ernst was appointed as receiver of the coal company,
and ordered to take possession of all of its property,
and manage and conduct its business, until otherwise
ordered by the court.    The order appointing the receiver
authorized him to borrow three thousand dollars to pay
wages of the miners and workmen then employed by
the company, and which were then earned; and it was
provided that no miner or workman employed in said
mine should be paid wages for more than three months
then last passed.    The court also ordered that the party
loaning said sum to the receiver should have a first lien
therefor upon all the property of the company for its
repayment.    The receiver qualified, and took possession
of the property as early as March 4, 1893; and in a report
to the court made on March 8, 1893, shows that he had
borrowed the three thousand dollars of the Des Moines
National Bank for the purpose of paying the wages of
miners and laborers due on March 4, 1893, and executed
his obligation to repay the same, specifying that said
sum should be a first lien upon all of the property of the
coal company; that on March 4, 1893, he paid to said

miners in the aggregate two thousand five hundred and eighty-two dollars and five cents out of said sum so borrowed. This report was approved.   March 30, 1893, one Jones, on his own behalf, and on behalf of ninety-four others, filed a petition of intervention in the cause, setting forth that petitioners had, within ninety days next preceding the transfer of said property to the receiver, performed labor for said Diagonal Coal Company, on the dates set out, and for the amounts shown, which sums in the aggregate amounted to over two thousand five hundred dollars; that the several sums were due each of said persons after allowing all just claims and set-offs, and no part thereof had been paid. Judgment was demanded against the coal company, and a lien prayed superior to the lien of all other parties.   June 26, 1893, the receiver made a report, showing that it was impossible to operate the mines of said coal company; that he could not procure money with which to prosecute the work; that his note for three thousand dollars borrowed under the order of the court had matured, and he had no funds with which to pay the same; that he had applied all moneys received from the operation of the mine to the payment of current expenses.   He asked and obtained an order for the sale of the personal property belonging to the coal company. The court also ordered that, from the proceeds of such sale the receiver should—First, pay the note for three thousand dollars and interest; second, pay sums due for wages to employes employed by him; third, pay other expenses of the receivership; and, if any sum remained, it should be held to await the further orders of the court.   Thereafter the receiver resigned, and J. P. Huett was appointed as receiver.   On September 1, 1893, Edwin Broude and five others intervened, alleging that they had been employed by the receiver, and that there was due them for services in the aggregate two hundred and thirteen dollars and eighty-seven

cents.   They asked that their claims be allowed and paid as preferred claims.   The claims of the ninety-five laborers above mentioned were on September, 1893, by the court, established as preferred claims, under chapter 48, Laws Twenty-third General Assembly.   The receiver was also ordered to pay the claims of Edwin Broude and the five others above mentioned as preferred claims.   It appears from the reports of the two receivers that they received, on account and for the sale of coal and personal property, three thousand and fifty-one dollars and sixty-six cents; that the real estate of the company sold at the foreclosure sale for four thousand five hundred dollars,—making an aggregate of over seven thousand five hundred dollars received by the receivers and sheriff, exclusive of the three thousand dollars borrowed of the bank.   From the reports of the receivers and the return of the sheriff, it appears that all this money has been paid out except the sum of sixteen dollars and twelve cents.   The court ordered that the money realized from the sale of the company's real estate should be distributed as follows:   Costs of sale and accruing costs, forty dollars; to Receiver Huett, the amount due upon the receiver's three thousand dollar note, one thousand seven hundred and fifty-six dollars and sixty-seven cents, and interest thereon, twenty-one dollars and twelve cents; to Richard Huett, to pay laborers employed by him, one thousand two hundred and forty dollars and seventy-nine cents; to plaintiff, for its services as trustee, five hundred dollars; and to its attorneys, for services, eight hundred and fifty dollars; to the holders of bonds, thirty-one thousand two hundred and forty-two dollars and four cents; and out of any balance the ninety-five labor claimants were to be paid, and, if there was not sufficient to pay all the claimants last mentioned, then the sum remaining was to be divided pro rata among said parties.    These

ninety-five labor claimants except and appeal.—
*Reversed.*

*Alanson Clark* and *E. J. Salmon* for appellants.

*Bishop, Bowen & Fleming* and *Cummins & Wright*
for appellees.

Kinne, J.—I.   It is first contended that the claims
of these laborers were not filed in time to come within
the provisions of the statute giving preference to such
claims.   The statute (chapter 48, Acts Twenty-third
General Assembly), provides:   "When the prop-
erty of any company, corporation, firm, or person
shall be seized upon any process by any court of
this state or when their business shall be suspended by
the action of creditors or be put into the hands of a
receiver or trustee, then in all such cases, the debts
owing to laborers or servants, which have accrued by
reason of their labor or employment to an amount not
exceeding one hundred dollars to each employee for
work or labor performed within ninety days next pre-
ceding the seizure or transfer of the property, shall be
considered and treated as preferred debts, and such
laborers or employees shall be preferred creditors, and
shall first be paid in full; and if there be not sufficient
to pay them in full, then the same shall be paid to them
pro rata after paying costs.   Any such laborer
or servant desiring to enforce his or her claim
for wages under this act shall present a state-
ment under oath showing the amount due after allow-
ing all just credits and set-offs, the kind of work for
which such wages are due, and when performed, to the
officer, person or court charged with such property
within ten days after the seizure thereof on any execu-
tion or writ of attachment, or within thirty days after
the same may have been placed in the hands of any

receiver or trustee; and thereupon it shall be the duty
of the person or court receiving such statement to pay
the amount of such claim or claims to the person or per-
sons entitled thereto (after first paying all costs occa-
sioned by the seizure of such property) out of the pro-
ceeds of the sale of the property seized." Provision is
also made for contesting such claims.

It appears that on February 28, 1893, Amos Cal-
lanan began a suit in the Jasper district court by attach-
ment, and levied upon all of the property of the coal
company. These laborers never filed their claims with
the sheriff. March 3, 1893, this action was commenced,
and Callanan was made a party defendant thereto. A
receiver was appointed, and he took possession of the
coal company's property at once. The laborers' claims
were filed with the receiver within the time fixed by
law. It is not clear from the record before us as to
what became of the Callanan suit, but it is certain that
the property of the coal company came into the receiv-
er's hands within four days after Callanan's attach-
ment had been levied upon it. It would seem, there-
fore, that Callanan's levy must have been aban-
doned. Under such circumstances, these appel-
lants were not required to file their claims with
the sheriff. They were properly filed with the receiver.

II. Appellants insist that, as their claims were
preferred and had been so adjudged by the court, they
should have been ordered paid prior to any and all other
claims, except such costs only as were incident to the
seizure of the property. That trustees' fees, attor-
neys' fees, and the like are not costs "occasioned
by the seizure of such property." It will be
observed that the first provision of the statute is that, if
there is not sufficient to pay laborers' claims in full, then
the same shall be paid to them pro rata, "after paying
all costs." The last provision we have quoted is to the
effect that such claims shall be paid "after first paying

all costs occasioned by the seizure of such property." Construing the whole section, we think it is manifest that the intent of the legislature was to prefer the amounts due labor claimants, who bring themselves within the provisions of the act, to that of all creditors. It is equally clear that it was intended that the costs attending the proceeding by which the property was taken should be paid in advance of even these preferred claims.   It is the usual rule that the costs are to be first paid; and we would not be justified in assuming that the rule in that respect was intended to be changed by the legislature in cases like this, unless the act clearly so provided.   No such presumption can arise from the language of the act.   Under it the costs must be paid, to the exclusion of all claims, including labor claims.   The record shows that the receiver, under the order of the court, borrowed three thousand dollars with which to pay the claims of miners and laborers then accrued.   It also appears that he paid said sum to miners and laborers for services rendered in the February preceding the time he took possession of the property.   Other receipts from the operation of the mine and from the sale of the personal property of the company were used in paying the expenses incident to the operation of the mine, the three thousand dollars borrowed, the salary of the receiver, and for the attorneys' fees.   That the amount received by the sheriff for the real estate sold was used in paying the balance of the three thousand dollars borrowed, the clerks' costs, a balance due laborers who had worked for the receiver, eight hundred and fifty dollars to attorneys, and five hundred dollars to the trustee, leaving sixteen dollars and twelve cents to be applied upon the judgment under the order of the court.   The fees of the receivers and their attorneys were as properly a part of the costs as any other sum necessary to be expended under the order of the court in taking the

property and in carrying on the business. It is said that these fees are excessive. There is nothing in the record from which we can say that such is the case. It does not appear what services the receivers' counsel rendered, or what the value of said services was. In the absence thereof, we are not authorized to assume that the fees allowed their counsel were unreasonable. As to the compensation allowed the receivers, there is no such showing in the record as to warrant us in saying that it was excessive. The sum allowed them is less than eight hundred dollars for services covering about a year. It appears that for a portion of said time the receiver carried on the business and operated the mine under the orders of the court. There was allowed to the trustee five hundred dollars, and to his attorneys eight hundred and fifty dollars. These allowances were made for services growing out of the foreclosure of the trust deed or mortgage. They were, properly speaking, no part of the costs of the receivership. The right to such fees must arise, if at all, by virtue of the trust and its provisions. The laborers' claims we have held to be preferred to pre-existing mortgage liens. *Reynolds v. Black,* 91 Iowa, 1 [58 N. W. Rep. 922]. It seems to us, therefore, that as to the trust deed or mortgage, and any fees provided for therein or arising thereunder, these claims of laborers must be held to be preferred. It is clear, also, that the court erred in providing for the payment of the bonds prior to the payment of appellants' claims.

In accordance with these views, the decree below will be so modified as to provide for the payment of the claims of these appellants before anything is paid to the trustee or his attorneys, or to the holders of the bonds secured by the trust deed; and, as the sum available for the payment of appellants' claims is not sufficient to pay them in full, it is ordered divided

among them *pro rata.* The cause is reversed, and remanded, for the entry of a decree in accordance with the views herein expressed.—*Reversed.*