[No. 20711. Department One. November 28, 1927.]

H. L. CAMPBELL et al., Plaintiffs, v. J. J. NICHOLS,
Defendant.

PHOENIX MUTUAL LIFE INSURANCE COMPANY OF HART-
FORD et al., Appellants, v. J. E. FRASER, as
Receiver of Defendant Nichols et al.,
Respondents.

J. L. ECKERSON, as Receiver of Davenport National
Bank, Appellant, v. PHOENIX MUTUAL LIFE
INSURANCE COMPANY OF HARTFORD et al.,
Respondents.[1]

[1] RECEIVERS (66, 68)—ALLOWANCE OF CLAIMS—PRIORITIES—EX-
PENSE OF CONTINUING BUSINESS. In view of the rule that a
receiver's costs, compensation and attorneys' fees, take priority
over other claims, an order permitting a receiver to lease
mortgaged lands and apply net proceeds, after deducting "cur-
rent" costs, charges and reasonable expenses of the receivership,
to be applied toward the reduction of interest due the mortgagor,
in consideration of which the mortgagee was understood to
agree to forbearance, construed as a whole, entitled the receiver
and attorneys to costs and compensation out of the fund thereby
realized, taking precedence over the mortgagee's claim for
interest.

[2] SAME (66, 68). Where a mortgagee agreed to forbear fore-
closure, in order to allow the mortgagor's receiver to lease the
mortgaged property for one year, under an order that the net
proceeds, after deducting "current" costs, charges, and reason-
able expenses of the receivership, be applied on the mortgage
interest due, the mortgagee's claim to such net proceeds takes
precedence over holders of the first issue of receiver's certifi-
cates, issued for the receiver's operations under a previous ex-

[1]Reported in 261 Pac. 408.

tension of time subject to the prior rights of the mortgagee; especially where the purchasers of such certificates looked to the previous prospective crops, which failed; since the previous expenses of the receiver were merged in the certificates, which were not mentioned in the order, the intent of which was that the interest accrued be paid from the crop produced, in consideration of the extension of time.

[3] SAME (66, 68). In such a case, the same would be true of a second issue of receiver's certificates to cover intermediate operations of the receiver, which were inferior to the first issue.

[4] SAME (88-1)—ACCOUNTING—SUFFICIENCY OF ACCOUNT. Findings refusing to order a receiver to recast his accounts will be sustained, where it appears that he has accounted for everything that he received, that no objections were made for years, and he was cross-examined at length, and could add nothing further from memory in a new account.

[5] SAME (93)—ACCOUNTING—COMPENSATION—AMOUNT. The compensation of a receiver will not be disturbed, where the receiver's fee came to less than the amount agreed upon before appointment, and, with the attorneys' fees, were less than the minimum, if the financial results had been what was anticipated.

Appeals from a judgment of the superior court for Lincoln county, Sessions, J., entered January 27, 1927, approving a receiver's final account and allowing claims, after a hearing on the merits to the court. Affirmed on appeal of Receiver Eckerson; reversed in part, on appeal of Phoenix Mutual Life Insurance Company.

*Voorhees & Canfield,* for appellants Phoenix Mut. Life Ins. Co. *et al.*

*W. W. Zent, G. M. Ferris* and *Joseph H. Johnston,* for appellant Eckerson.

*Pettijohn & McCallum,* for respondent Fraser.

TOLMAN, J.—Here are two appeals from an order of the trial court approving the final account of the receiver, allowing compensation due him and his attorneys, and closing the receivership, each appeal

being independent of the other. The receiver was appointed December 28, 1920. He immediately qualified and entered upon the discharge of his duties, continuing until the entry of the order appealed from, on January 27, 1927.

It appears that defendant Nichols was engaged in farming on a large scale, in Lincoln county, operating one farm of twenty-two hundred acres, which he owned subject to certain mortgages, and another farm, situated at some distance from the first, of six hundred and forty acres, which he held under lease.

Nichols being very heavily indebted and insolvent, some of his principal unsecured creditors, after conference, determined that a receiver should be applied for, and solicited respondent Fraser to act in that capacity, agreeing with him that his services would be worth fifty dollars per month, and that so long as actual farming operations should continue, he should employ Nichols to superintend and manage them under the receiver's general directions. Accordingly, this action was brought, and respondent was duly appointed as above indicated.

The farming operations were continued under the receiver for one year, but without profit, the lease on the six hundred and forty acre farm then expiring. By order of the court, the receiver borrowed ten thousand dollars to finance his year of operations, issuing receiver's certificates, which recited that they were a first lien upon all of the property of the estate, subject to the real estate mortgages then existing. After the result of the year of operations was determined, the receiver, under order of the court, sold all of the personal property, as well as the crop produced; and, after paying operating expenses, expenses of the sale, and the like, applied the balance of the funds available toward the payment of the receiver's certificates, with

accrued interest, and all were retired, except a small amount which, with interest, amounted, at the time of the making of the final order, to $632.72.

On April 22, 1922, the receiver, by petition, brought to the attention of the court the fact that the twenty-two hundred acre farm was encumbered by two mortgages, aggregating the principal sum of twenty-seven thousand dollars, upon which there was past due and unpaid interest in the sum of seventeen hundred dollars; that foreclosure was threatened, and unless the overdue interest was paid, the expenses of foreclosure would be added, and the property would probably be lost.

Thereupon, the court ordered the receiver to make a second issue of receiver's certificates in the amount of seventeen hundred dollars, to be a lien upon all of the property of the insolvent, subject to the mortgage and to the prior issue of receiver's certificates. This was done, and the money so raised applied to the payment of the interest on the mortgages. Thereafter, the receiver rented the lands belonging to the estate, receiving one-third of the crop as rental; but apparently the returns were disappointing, and nothing more was ever paid upon any of the receiver's certificates. It appears to be admitted that these results were due to general conditions over which the receiver had no control, and it is nowhere intimated that the failure to obtain greater financial returns was due to any fault or omission on the part of the receiver.

Thereafter, from year to year, covering the seasons of 1923, 1924 and 1925, upon application of the receiver, he was directed in advance to apply so much of the rental received from the mortgaged lands as might be necessary to the payment of interest on the mortgages, in order to prevent foreclosure, and apparently, in the expectation or hope that conditions

might improve, the land might become salable and something could be realized from the equity.

On January 26, 1926, the receiver again presented a like petition to the court, in which he again showed to the court that the mortgages were subject to foreclosure, which was threatened, that he had no property or money from which he could pay the mortgages or interest, that it had been impossible to find a purchaser for any of the land, and that he believed he could secure an agreement with the holders of the mortgages for an extension of time to February 1, 1927, upon condition that he pay to the holders of the mortgages all, or so much as might be necessary to cover accruing interest, of the proceeds received as rental, after deducting therefrom cost of sacks necessary to be furnished and the court costs of the receivership, including a reasonable compensation to the receiver and his attorneys.

On the presentation of the petition, an *ex parte* order was made, permitting the receiver to renew the lease for one year upon the same rental of one-third of the crop, and authorizing him to enter into an agreement with the holders of the mortgages, by which the net proceeds of the rental received, "after deducting costs, charges and expenses, and reasonable expenses of the receivership," were to be applied toward the reduction of interest due on said mortgages and toward the payment of the taxes on said lands.

It is true that, in this order of January 26, 1926, in reciting what was asked for by the petition, the word "current" is used, making the recitation read, "after deducting a sufficient amount to pay *current* costs of the receivership and the cost of sacks, etc." It appears that, during the year 1926, the landlord's portion of the crop coming into the hands of the receiver was of the value of, and sold for, $1,837.97, out of

which the receiver paid insurance on grain $6.77; sacks $106.85; expenses three trips to Wilbur, $45; and telephone tolls $5.40; as shown by the receiver's final account; and the appellant Phoenix Mutual Life Insurance Company, holder of the first mortgage, now claims that the balance of the proceeds of the crop, after deducting these items, amounting to $1,623.95, should have been paid to it under and by virtue of the order of January 26, 1926; while, in fact, the order appealed from treats this balance as property of the estate, directs the payment of the compensation of the receiver and his attorneys therefrom, and the balance of $523.38 is directed to be paid by the receiver to the holders of the first issue of receiver's certificates to apply on the balance due thereon.

[1] No formal contract was entered into between the mortgagees and the receiver, each side apparently relying upon the court's order as being a sufficient contract. The appellant insurance company contends that, its mortgage being then foreclosable, its forbearance obtained by virtue of the order of January 26, 1926, resulted in the creation of the fund now in controversy, and that the fund came into existence charged with a trust in its favor, so that neither the crop nor its proceeds ever became a part of the insolvent estate. In a general sense, we think that contention is sound; but, even so, the crop and its proceeds were chargeable with whatever the order, under which the fund was created, charged it.

Considerable stress is laid upon the use of the words, "current cost" in the recitals of the order; but we think that the order must be construed as a whole, and that the words which are used only to describe what the petition asks for (especially where, as here, they are not supported by the petition itself) cannot

be taken as limiting the express terms of the formal order itself.

We conclude, therefore, that the order, construed as a whole, fully advised the mortgagees that there would be deducted from the rentals received under it "costs, charges and expenses, and reasonable expenses of the receivership," which include reasonable compensation to the receiver and his attorneys.

It is, we think, a universal rule of law that the necessary and proper compensation of a receiver and his attorneys is a part of the costs of the receivership, and entitled to priority, even over receiver's certificates. 34 Cyc. 351, 352.

"An order of the Chancellor authorized a receiver of railroad property to issue certificates of indebtedness, which should be a first lien 'in preference to any mortgage, judgment, or other liens or claims.' *Held,* that the allowance to the receiver and his counsel had priority over such certificates which in turn had priority over claims for operating expenses." Syllabus, *Jeffers v. New Jersey & P. R. Co.,* 86 N. J. Eq. 402, 99 Atl. 189.

*St. Paul Title Insurance & Trust Co. v. Diagonal Coal Co.,* 95 Iowa 551, 64 N.W. 606; *Smith v. Adlerman,* 105 Misc. Rep. 223, 172 N. Y. Supp. 682; *Espuella Land & Cattle Co. v. Bindle,* 11 Tex. Civ. App. 262, 32 S. W. 582; *Chesapeake & O. R. Co. v. Atlantic Transp. Co.;* 62 N. J. Eq. 751, 48 Atl. 997; *St. Louis Union Trust Co. v. Texas Southern R. Co.,* 59 Tex. Civ. App. 157, 126 S. W. 296.

The cases cited by the appellant insurance company are readily distinguishable upon the facts, and serve to point out that a receiver, by improper or unauthorized acts, may forfeit or be estopped from claiming what would otherwise be his due. We find nothing here taking the question from under the operation of the general rule.

[2] The allowance of the balance, after payment
to the receiver and his attorneys, to the holders of the
first issue of receiver's certificates, presents a far
more serious question. In a sense, these certificates
represent receiver's expenses, but the whole situation
must be considered, in order to properly place them.
At the time of their issuance, it was contemplated that
the receiver would, with the money thus obtained,
farm the land and raise a crop which would pay its
cost and more. The purchasers of the certificates
undoubtedly looked to the prospective crop and to the
other then valuable assets of the estate for their pay-
ment. These proved to be insufficient, and if the re-
ceiver and the court had not resorted to the plan
adopted for the payment of interest on the mortgages,
foreclosure would have taken place, and the certificate
holders would have received nothing more. By pur-
suing the plan, time was gained, which all thought or
hoped would result in saving something from the
equity in the land. The holders of the certificates then
unpaid were without prospect of any further payment,
except as it might be obtained from that equity. A
foreclosure would remove their last and only hope of
payment. They were asked to give up nothing to
secure the extension. The mortgagees alone could ex-
tend, and they did extend, upon the understanding that
the interest accrued would, if possible, be paid from
the crop, and the crop was produced on that under-
standing. The expenses of the receiver represented
by the certificates had been merged in the certificates,
and we think if the court had intended that those cer-
tificates be preferred to the interest on the mortgages,
they should have been expressly mentioned in the
order. As between the mortgagees and the certificate
holders, the equities seem to be with the mortgagees,

and we think that the trial court erred in not directing the balance of $523.38 to be paid to them.

[3] We come now to the appeal of Eckerson, as receiver of the Davenport National Bank. The bank is a general creditor of Nichols and also the holder of the second series of receiver's certificates, amounting to seventeen hundred dollars. During the course of these proceedings, the bank became insolvent, and Eckerson became its receiver. What we have already said as to the rights of the holders of the first series of receiver's certificates applies here, the more so because the second series was made subject to the first, and there could be no recovery on the second series unless all of the receiver's certificates were given priority over the claim for compensation to the receiver and his attorneys. Since that may not be done, we need not further discuss this question.

[4] The remaining questions go to the refusal of the trial court to direct the receiver to recast his accounts, the amounts allowed as compensation to the receiver and his attorneys, and to the approval of the account.

As to the first and last of these, it may be said that the receiver did not keep his accounts with all the details possible, and that, as to some small items of expense, his only vouchers were his checks drawn to himself personally. We have carefully read the statement of facts in its entirety, and are quite satisfied, as was the trial court, that the receiver has accounted for everything he received, that his disbursements were reasonable and proper under the circumstances shown, and that no different result would be obtained by a recasting of the account. The receiver was cross-examined at length, and gave his best recollection as to the matters inquired about, which was all he could

do if he attempted to recast the account. It may be that if, in the beginning, it had appeared that the matter would drag out over half a dozen years, better records would have been kept; or if notice of the filing of a prior account had been given at the time, requiring objections, if any, to be then made, most of the matters complained of could have been explained with greater certainty. But however that may be, we see no reason now for withholding approval.

[5] The court allowed the receiver a sum which, together with the amount he had previously been paid, made his total fee twenty-five hundred dollars. This was less than the fifty dollars per month to which the principal creditors had agreed, and, as we see it, was entirely reasonable under the conditions shown by the record. The receiver's attorneys were allowed a sum which, together with what had theretofore been paid them, made a total allowance of $1,346.28, which also appears to be a very modest fee. It is apparent that the court took into consideration the unfortunate conditions under which the trust was administered, and made the allowances considerably less than would have been considered the minimum if the financial results had been what was originally anticipated.

The judgment of the trial court is affirmed upon this appeal.

On the appeal of the Phoenix Mutual Life Insurance Company et al., the judgment is reversed, with instructions to enter a judgment directing the payment of $523.38 to the appellants, instead of to the holders of the first series of receiver's certificates.

The appellants Phoenix Mutual Life Insurance Company et al., will recover costs in this court.

MACKINTOSH, C. J., PARKER, MITCHELL, and FRENCH, JJ., concur.