**WIRE WHEEL CORPORATION OF AMERICA et al. v. FAYETTE BANK & TRUST CO. OF CONNERSVILLE, IND., et al.**

**FAYETTE BANK & TRUST CO. OF CONNERSVILLE, IND., et al. v. FIRESTONE TIRE & RUBBER CO. et al.**

Circuit Court of Appeals, Seventh Circuit. December 12, 1928.

Rehearing Denied February 21, 1929.

Nos. 3924, 3972.

In No. 3924:

Harvey Elam, of Indianapolis, Ind., and Willis Bacon, of Akron, Ohio, for appellants.

Geo. L. Wire, of Chicago, Ill., for appellees.

In No. 3972:

Geo. L. Wire and Arthur C. Wetterstorm, both of Chicago, Ill., for appellants.

Albert Ward, of Indianapolis, Ind., for the United States.

R. S. Springer, of Connersville, Ind., for appellee Fayette county treasurer.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Both appeals will be considered in one opinion. Appellants seek to modify the decree which determined the order of payment of the debts or claims of the insolvent receivership of the Lexington Motor Company.

One William P. Herod was appointed receiver of the Lexington Motor Company on April 28, 1923. As such receiver he conducted its business as a going concern. In the course of the administration of its affairs he obtained an order for the issuance and sale of $250,000 of receiver's certificates which he duly negotiated. Appellants in No. 3972 are the holders of such certificates.

The business was conducted at a loss. After several years of operation, the first-named receiver, Herod, resigned, and his successor, Barnard, sold the assets of the insolvent company, realizing about $155,000 therefrom.

The order of payment and the amount due each creditor as fixed and determined by the District Court is herewith set forth:

| | |
|---|---|
| 1. Receivers' and attorneys' fees | $ 47,850 00 |
| 2. United States excise taxes | 19,718 86 |
| 3. State of Indiana personal property taxes | 9,383 54 |
| 4. Merchandise creditors of the receiver (having no lien by any order of court) | 170,078 17 |
| 5. Receiver's certificates (made first liens by orders of court subject to costs and expenses) | 195,588 13 |
| 6. Other receivership creditors | 52,197 08 |
| | $484,815 78 |

The holders of the receiver's certificates insist that their claim should be paid before

any sums are paid for taxes. If this position is not sustained, they insist that their claim should be paid before any merchandise creditors are paid. And if this position be not accepted, the certificate holders insist that they should share pro rata with the merchandise creditors what is left after the first three items are paid. They also object to any allowance to the receiver, Herod.

The evidence justifies this brief statement of facts: The receiver, at the request of the outstanding creditors, sought and secured an order directing him to conduct the business of the insolvent company, the Lexington Motor Company, as a going concern; that to carry on said business receiver's certificates were issued; that to more successfully conduct the business, a second issuance of receiver's certificates was authorized which were sold to various financial institutions or delivered to business concerns furnishing material; that a part of these receiver's certificates were retired through payment; that the action of the receiver was at all times characterized by the utmost good faith; that such business was conducted at such a great loss that the receivership itself became insolvent; that the assets were thereupon sold by the second receiver and approximately $155,000 received therefrom; that the outstanding obligations of the receivership were about $495,000; that the general creditors of the Lexington Motor Company are not interested in these proceedings; that the creditors of the receivership were, by the District Court, divided into six classes as above stated.

In view of the amounts involved, the controversy narrows itself down to a consideration of the contentions of the certificate holders. Inasmuch as these claims exceed the amount of cash on hand, they will, if given priority over the receiver's fees and taxes, consume all of the disposable funds. If, on the other hand, the receiver's fees and the taxes are given priority over the receiver's certificates, they will be paid in full and the balance only paid to the certificate holders. There remain the further contentions of the merchandise creditors and the certificate holders, the importance of which is appreciated when it is observed that the claims of each class exceed the amount available for distribution.

On the cross-appeal, No. 3924, the general merchandise creditors seek a modification of the decree which sanctioned the receiver's retirement of certain certificates during the course of the receivership.

*Receiver's and Attorney's Fees.*—No question is presented as to the amount or priority of the attorney's fees. It is contended, however, that nothing should have been allowed to the receiver, Herod, for services rendered.

With this position we cannot agree. Were the matter otherwise in doubt, we would unhesitatingly accept the findings and conclusions of the district judge who was fully cognizant of all the doings of the receiver. The court said:

"Upon the issues so joined the Court finds for said respondent William P. Herod, and that the allegations of said respondent's answer are true and correct, and that the allegations of said cross-bill charging said respondent with failure to perform his duties as received herein, and with acts of negligence, misfeasance, malfeasance, disobedience of order of court, and misappropriation and misapplication of receivership funds are all untrue, unfounded and incorrect. The court further finds that said respondent has fully and properly accounted for all funds, property, moneys and assets of Lexington Motor Company and the receivership which came into his possession or under his control, including all automobiles manufactured by said receiver; and further finds that said respondent should be allowed and paid reasonable compensation for his services as receiver herein."

The evidence fully supports this finding. Mr. Herod's conduct as receiver was entirely free from any charge or suspicion of impropriety. He may have been overzealous and oversanguine, but his course was at all times backed by the requests of the general creditors of the Lexington Motor Company, who entertained the hope and expectation that a favorable sale of the company as a going concern could, and would, be advantageously made. The receiver's good faith and his confidence in the plant is evidenced by the fact that, out of his own pocket, he advanced $34,000 to meet the pay roll, and to keep the business going. At the close of his receivership his account showed that he had advanced personally over $20,000—no part of which will ever be paid to him. By the final decree here under review, he is recognized as a creditor whose status is subservient to the certificate holders and the general merchandise creditors. He has not appealed. This action by him speaks louder than words and leaves us with no doubt as to the propriety of his compensation.

Moreover, it appears that the receiver purchased large amounts of merchandise and employed labor to make this merchandise into

automobiles and automobile parts. The total business aggregated over $3,000,000. He accounted fully and satisfactorily for all moneys. The only criticism worthy of consideration is his failure to make *written reports* to the court concerning the conduct of the business. It is contended that had such written reports been made and the court advised of the great losses the court would have entered an order to cease operations. There is no doubt but what such written reports should have been filed. Regardless of the statements furnished by the receiver to the creditors, the court should have received written, sworn statements periodically: It should have been fully advised of the doings of the receiver at all times.

And this is particularly true where the business is run by the receiver at a loss. No receiver should continue to operate a losing business save upon the consent of the creditors and upon the order of the court after the facts showing such loss has been fully disclosed to the court. Atlantic Trust Co. v. Chapman, 208 U. S. 360, 377, 28 S. Ct. 406, 52 L. Ed. 528, 13 Ann. Cas. 1155.

But the present controversy is between the *creditors* and the *receiver,* and the latter's failure to file written reports in no wise prejudiced the creditors. They were fully advised of the receiver's doings. He acted upon their urgent request. He conducted the business of the motor company only because the creditors wished him to do so. His one large undertaking in automobile manufacturing was undertaken at their insistence and concerning it the court was fully advised. These creditors were in many instances creditors of the insolvent motor company as well as of the receivership.

Under such circumstances, the court properly allowed the receiver his compensation. The amount of the allowance was far from extravagant. In fact, it was a most conservative allowance.

*Taxes.*—The receiver made the required reports to the United States government showing the number of automobiles manufactured. He only paid a portion of the excise tax. The certificate holders contend that the government's claim for the balance of its tax never became a lien either upon the cars or other property in the hands of the receiver and must be paid as any other general unsecured creditor.

The government relies upon section 3466, R. S. (31 USCA § 191) and cites Bramwell v. U. S. Fidelity Co., 269 U. S. 483, 46 S. Ct. 176, 70 L. Ed. 368; Price v. U. S., 269 U. S. 492, 46 S. Ct. 180, 70 L. Ed. 373; In re

Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689.

The tax became due at the time fixed by the statute for filing the return. Section 5632 (e), Barnes' Code Supp. 1919–1926 (26 USCA § 885). The receiver therefore became indebted to the United States within the provision of section 3466, R. S. (31 USCA § 191) when he made his monthly reports. Price v. U. S. supra. "The word 'debts' as used in R. S. 3466 includes taxes."

We think the record sufficiently discloses insolvency on the part of the receiver. The debt due the United States was therefore entitled to payment in advance of the claims of the certificate holders or the general creditors.

This conclusion is confirmed by a reading of the order of the court which fixed the status of the certificate holders.

Respecting the county tax, we are likewise convinced that it was the intention of the court to direct (and the order so provided) that the receiver's certificates should be subject to the "receivership costs and expenses"; that among the receivership costs and expenses were such items as receiver's fees, attorney's fees, court expenses, *and taxes* (local as well as federal).

*Merchandise Creditors of the Receiver.* —Whether the merchandise creditors should be given preference over the claims of the certificate holders must be determined by the language of the order which authorized the issuance and sale of the receiver's certificates. In the absence of any provision in such order, the certificate holders would have stood on a parity with the merchandise creditors.

The certificate holders contend that the order of the court gave them priority over the merchandise creditors. The merchandise creditors, on the other hand, argue that the order directing the issuance of the receiver's certificates made the certificate holders subordinate to the claims of the merchandise creditors. It therefore becomes necessary to examine the language of such order. The order reads:

"It is further ordered and decreed by the Court that * * * the indebtedness thereby created shall not be a personal indebtedness of said Receiver, but said indebtedness shall be a first and prior claim and lien * * * upon that unincumbered part of the property and assets of said Lexington Motor Company against which there now exists no mortgage, lien or other incumbrance, subject, however, to the prior payment of the receivership costs and expenses herein;"

The general merchandise creditors' reli-

ance is upon the clause *"subject, however, to the prior payment of the receivership costs and expenses herein."* It is their contention that "receivership costs and expenses" include merchandise accounts. In support of this position they cite In re John W. Farley & Co. (C. C. A.) 227 F. 378.

The certificate holders insist that the expenses of operation are not covered by cost and expenses of the administration and that it was *cost and expenses of administration* only to which the court referred when it directed that the certificate holders' lien should be subject to the prior payment of the "receivership costs and expenses herein." In support of their position they cite Jeffers v. N. Y. & Penna. R. Co., 86 N. J. Eq. 402, 99 A. 189; J. B. & J. M. Cornell Co. (D. C.) 201 F. 387; Central Trust v. American Foundry (Md.) 141 A. 111; Freeman v. Craft, 220 Ky. 15, 294 S. W. 822; Petersburg Sav. & Ins. Co. v. Dellatorre (C. C. A.) 70 F. 643; Campbell v. Nichols, 145 Wash. 614, 261 P. 408.

The facts in the Farley Case distinguish it from the instant case. The language of the opinion therefore in that case must be read in the light of the facts there disclosed.

We have carefully examined the record and the briefs in the Farley Case and find that in at least three respects it differs from the instant suit: (a) In the Farley suit the creditors who contested priority of the receiver's certificates were labor and material lienholders. (b) The language of the order fixing the status of the certificate holders was, in the Farley Case, subject to "the costs of administration of this estate." In the instant suit, the lien of the certificate holders was subject to the "prior payment of the receivership costs and expenses herein." (c) The petition and order in the Farley Case disclosed a clear intention to use the money borrowed, as well as the moneys due upon the contract, to first pay "labor, help, material, etc." From the petition and order in the instant case, it was apparent that the receiver was about to undertake the manufacture of automobiles which would cost approximately $2,500,000 and which would, unless the business was sold in the meantime, continue the operation of the receivership property for a period of years.

(a) Much weight was given in the Farley Case to the fact that the claimants who contested the priority of the certificate holders were largely wage-earners. The receiver in the Farley Case was authorized to complete a contract which the bankrupt had entered into for the construction of a sewer in the city of St. Louis. The construction work was but partly completed, when bankruptcy occurred.

Payments by the city were made monthly upon certificates showing the progress of the work. Heavy rain interfered with the satisfactory completion of the work by the receiver, and it became necessary to borrow money to pay for the "labor, help, material, etc." to complete it. The petition particularly set forth the amounts due upon the contract, the amounts that would become due upon completion of the work, the amounts due for unpaid bills, etc. It was not the intention of the court, nor could the parties have so understood, that the lien of the certificate holders should extend to the moneys by them advanced or to the moneys by the receiver obtained from the city ahead of the claims of workmen or the material lienholders.

The Bankruptcy Law indicated a settled purpose by Congress to give preference to wages due to workmen, clerks, and servants which had been earned three months before the date of the bankruptcy proceedings. Section 64; 11 USCA § 104. It was hardly conceivable that a preference should be given to a wage-earner whose employment antidated bankruptcy and be refused to a wage-earner whose wages were earned during bankruptcy.

In the instant suit it is not contended that the general merchandise creditors hold lienable claims.

(b) The expression "costs of administration" used in the Farley Case was, under the decisions and other authorities more inclusive than "receivership costs and expenses." This distinction doubtless had its origin in the difference in duties of a trustee in bankruptcy and a receiver in an equity suit. At any rate, there exists support for the contention that "costs of administration" in a bankrupt estate include "the expenses of conducting the business." Remington on Bankruptcy (2d Ed.) § 2020; In re Williams' Estate (C. C. A.) 156 F. 934; In re Howard (D. C.) 207 F. 402.

(c) In the Farley Case the petition for authority to issue receiver's certificates, and the order granting the prayer of such petition, clearly indicated that the trustee, in order to administer the bankrupt estate, was required to complete a certain contract for the construction of a sewer, the performance of which called for the employment of labor and the use of certain sewer pipes. It was a single enterprise, the completion of which, the interested parties believed, would result in a gain to the estate. The receiver's certificates were issued that money might be ob-

tained to pay labor and material bills necessary for the completion of the work.

In the instant suit the reasons for issuing the receiver's certificates were quite different. The petition recited the facts which disclosd a desire to keep the business of the Lexington Motor Company going until a satisfactory sale could be negotiated. This object was to be attained by the receiver manufacturing 2,500 automobiles which it was believed could be sold at a profit. The amount realized from the sale of the receiver's certificates ($250,000) would not exceed one-tenth of the estimated selling price of the finished product. As the cars were manufactured and sold, it was expected that moneys would be realized from which other cars might be made and sold. One hundred thousand dollars of the proceeds was used to pay off a previous issue of receiver's certificates.

In the very nature of the operation of the business thus contemplated, it was inconceivable that the proceeds derived from the sale of the certificates would be sufficient to pay merchandise claims aggregating over ten times that amount. And it was upon this fact background that the court used its language which defined the status of the receiver's certificates, to wit, "first and prior claim and lien upon the unencumbered part of the assets of the Lexington Motor Company against which there now exists no mortgage," etc.

The language of the order entered in the instant case, "subject, however, to the prior payment of the receivership costs and expenses herein," must be read as a part of the entire sentence in which it appears. That sentence gave to the receiver's certificates and the indebtedness represented thereby, the status of a *"first and prior claim and lien"* on that "unencumbered part of the property and assets of the said Lexington Motor Company against which there now exists no mortgage, lien or other encumbrance." The "subject" clause is a limitation of that "prior claim and lien" clause. The court inserted a first lien provision to insure saleability. Yet, if the contentions of the merchandise creditors be accepted, the court made the debt of the certificate holders, not a first lien, but a last lien on the assets of the receiver. If the certificates were to be subservient to receiver's fees, attorney's fees, taxes, *and to the claims of the receiver's general unsecured creditors,* why describe the lien of the certificate holders as a "first and prior claim and lien"?

Our conclusion is that the order gave the certificate holders priority over merchandise creditors.

The disposition of this assignment of error renders it unnecessary to consider any of the other contentions advanced by the holders of the receiver's certificates and also disposes of the question presented on the cross-appeal.

The decree is reversed, with directions to enter one in accordance with the conclusions herein expressed. Appellees shall recover their costs in this court in No. 3924 and shall recover their costs against appellees other that the state of Indiana and the United States government and William P. Herod in this court in No. 3972. Provided, however, that only one-half the costs of printing the transcript shall be charged against the appellees, the merchandise creditors. Appellee Herod and the state of Indiana and the United States of America shall each recover his, or its, costs against appellants in 3972.

PAGE, Circuit Judge. I concur in the conclusion.